UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robert Newell

    v.

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB

Civil No. 17-cv-250-LM
Opinion No. 2019 DNH 139

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Robert Newell brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranties claims, and violation of consumer protection laws. Newell's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. This case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Newell objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

Newell is a resident of Maine. On May 21, 2015, Newell had a surgical procedure at Bridgton Hospital in Bridgton, Maine, to repair an umbilical hernia. His physician used a piece of C-QUR V-Patch mesh for the procedure. In August 2015, Newell again went to Bridgton Hospital because the surgical wound was severely infected, and an abscess had formed. When the wound was opened, his physician found that a sinus tract had formed to the mesh and that the mesh was only partially incorporated. The mesh was removed.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Newell, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Newell alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Newell alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to

be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. Newell further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Newell brings claims for negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability (Count VI), and violation of consumer protection laws (Count VII). He seeks compensatory and enhanced damages.

**DISCUSSION**

Defendants Atrium and Maquet seek dismissal of Counts V, VI, and VII. They contend that Maine law governs the liability portion of Newell's claims and that his breach of warranties and violation of consumer protection laws claims fail under the applicable law. Newell objects, arguing that it is too early for the court to engage in a choice-of-law analysis, that defendants fail to show an actual conflict with respect to breach of warranty or consumer protection law which would require a choice of law, and that her claims are adequately pleaded.

I.  Choice of Law

Defendants contend that Maine law has an interest in the case because Newell is a resident of the state and his alleged injury occurred there. They further contend that a choice-of-law analysis is necessary because Maine's warranty and consumer protection law conflicts with New Hampshire's law and that, under New Hampshire's choice-of-law principles, Maine law

3

governs.  Newell argues that a choice-of-law analysis is premature because additional factual development is necessary and that, regardless, defendants have not sufficiently identified an actual conflict.  He further contends that if the court engages in a choice-of-law analysis, New Hampshire law governs.

    A.  Timing of Choice of Law

Newell argues that a choice-of-law analysis is "heavily fact dependent" and that his complaint does not allege sufficient facts to allow the analysis.  He further argues that because his case involves seven complex claims, which require discovery, a choice of law cannot be made now.  He states that information about defendants' liability must be obtained through discovery.

In support of his position, Newell relies on Knightly v. Gula, No. 16-cv-124-AJ, 2016 WL 4401996 (D.N.H. Aug. 18, 2016) and Rivera v. Body Armor Outlet, LLC, No. 17-cv-512-LM, 2018 WL 1732154 (D.N.H. Apr. 10, 2018).  In Knightly, the magistrate judge explained that she could not make a determination on one factor of the choice-of-law standard because the complaint was only five pages long and she lacked sufficient information about which state had the most substantial connection to the case.  2016 WL 4401996, at *1 (internal quotation marks and citation omitted).  In Rivera, the court explained that the evidence pertaining to whether the plaintiff agreed to a choice-of-law provision was "sparse and, more importantly unclear," which was the main reason the choice-of-law issue was premature.  2018 WL 1732154, at *1.

Unlike the parties in those cases, Newell does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery.  His complaint is thirty-four pages long, and the location of where defendants

4

manufactured the allegedly defective products and where Newell had his surgery is not in dispute. As a result, Newell has not shown that the choice-of-law issue defendants raise here is premature.

B. Standard

As defendants state, New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

C. Actual Conflict

New Hampshire and Maine are interested states in this case. Defendants, who bear the burden to show that Maine law actually conflicts with New Hampshire law, argue that an actual

5

conflict exists because Maine's Unfair Trade Practices Act, M.R.S. §§ 213 et seq., does not apply to non-consumer transactions, while New Hampshire's Consumer Protection Act, RSA Chapter 358-A, arguably would cover those transactions. Newell contends that merely identifying a difference in the law is insufficient to show an actual conflict without showing that the difference would change the outcome in this case. Newell also notes that the cited conflict applies only to Count VII and that defendants' brief does not address the remainder of the claims.

       1. Claims affected

Newell correctly points out that, in their memorandum in support of their motion to dismiss, defendants identified a conflict only with respect to Count VII, the consumer protection laws claim. Newell contends that the doctrine of dépeçage requires a choice of law as to each claim and that, because defendants failed to identify an actual conflict as to Counts I – VI, the court should apply to New Hampshire law to those claims.

In their reply, defendants argue that the court should not apply the doctrine of dépeçage here because the "issues before the court are inextricably intertwined . . . given the common nucleus of facts that form the basis of" Newell's claims. Doc. no. 127 at 3. They also contend that, regardless, Maine law actually conflicts with New Hampshire law with regard to Newell's breach of warranties claims. Specifically, they assert that Maine and New Hampshire law conflict with respect to breach of warranty because Maine requires proof of reliance on a warranty and New Hampshire does not.

The court agrees with Newell that dépeçage requires the court in the context of this case to consider the choice-of-law question as to each claim. First, defendants' argument that a court

6

should not apply dépeçage when the claims are "inextricably intertwined" is based on a case from the Eastern District of Wisconsin. See Stupak v. Hoffman-La Roche, Inc., 287 F. Supp. 2d 968, 971-72 (E.D. Wis. 2003) (citing Boomsma v. Star Transp., Inc., 202 F. Supp. 2d 869, 878 (E.D. Wis. 2002)). A recent case in that district suggests that the "inextricably intertwined" principle may not be a correct statement of the law. See PCM Salles Inv. Vantage Point Corp., No. 18-CV-1230-JPS, 2019 WL 3070078, at *5 n.1 (E.D. Wis. July 12, 2019) (noting that the "inextricably intertwined" theory came from no "source of law, but rather from a party's brief" and that "[n]o Wisconsin appellate courts, or the Seventh Circuit for that matter, have endorsed the 'inextricably intertwined' phrase").

Even if the court were inclined to follow defendants' questionable theory, they have not shown that the issues presented in Newell's product liability claims, breach of warranties claims, and violation of consumer protection laws claim are inextricably intertwined. Indeed, the issues are different because the legal standards for the claims require different elements of proof. Therefore, dépeçage requires the court to consider the choice-of-law question separately for each claim.

Defendants have not shown, or attempted to show, an actual conflict with respect to Counts I through IV and have not moved to dismiss those claims. Because defendants raise the choice-of-law issue in their motion but do not show an actual conflict as to Counts I – IV, New Hampshire law governs the liability portion of those claims. See Aftokinito, 2010 WL 3168295, at *3.

Defendants contend that an actual conflict exists between New Hampshire law and Maine law with respect to the remaining claims because Newell did not allege that he relied on warranties made by defendants, as required under Maine law, and does not allege a consumer

7

transaction, as required under Maine's Unfair Trade Practices Act. They contend that New Hampshire law does not require either element. While Newell challenges the sufficiency of defendants' showing, and the court agrees that the issue of whether there is an actual conflict is far from certain, the better course here is to presume an actual conflict, based on the merits discussion, and proceed to a choice-of-law analysis.

D. What Law Governs

New Hampshire uses a five-factor test for choice of law: "(1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the states in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own state's governmental interests rather than those of other states; and (5) the court's preference for what it regards as the sounder rule of law." Matter of Geraghty, 169 N.H. 404, 409, 150 A.3d 386, 391 (2016). "The relative importance of each factor varies depending on the type of case." Lacaillade v. Loignon Champ-Carr, Inc., No. 10-cv-68-JD, 2011 WL 4738654, at *2 (D.N.H. Oct. 7, 2011).

The first three factors of the New Hampshire standard have little or no relevance in this case. The first factor—predictability of results—"is usually implicated only in suits involving contractual or similar consensual transactions and emphasizes the importance of applying to the parties' bargain or other dealings the law on which they agreed to rely at the outset." Stonyfield Farm, Inc. v. Agro-Farma, Inc., No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009) (internal quotation marks and citations omitted). Thus, the first factor has no weight here.

The second factor—maintenance of reasonable orderliness and good relationship among the states in our federal system—requires only that the court avoid applying the law of a state

8

"which does not have substantial connection with the total facts and with the particular issue being litigated." Lessard v. Clarke, 143 N.H. 555, 557 (1999) (internal quotation marks and citation omitted). Both Maine and New Hampshire have substantial connections with the facts in this case. The surgeries occurred in Maine, and Atrium is located in New Hampshire and manufactures and sells its C-QUR mesh products here.

With respect to the third factor—simplification of the judicial task—the court is of course more accustomed to New Hampshire law but could also apply Maine law with little difficulty. See Lacaillade, 2011 WL 4738654, at *3 ("Although it may be easier for a court to apply the forum state's substantive law, it certainly cannot be argued that Maine's law regarding the relevant issue is so complex as to outweigh other competing considerations."). Therefore, none of the first three factors tips the balance on the choice-of-law analysis in this case.

The fourth factor considers the advancement of the forum state's governmental interests. This factor "becomes important only when New Hampshire has a particularly strong policy in reference to local rules of law, which the other state[']s laws under consideration would fail to achieve." Stonyfield Farm, 2009 WL 3255218, at *8 (internal quotation marks, citation, and alterations omitted). "Otherwise, New Hampshire's interest is limited to the fair and efficient administration of justice." Id. (internal quotation marks and citations omitted). Here, as in many other cases, this factor is of limited importance. To the extent it carries any weight, however, it favors the application of New Hampshire law. New Hampshire has an interest in the liability of a New Hampshire company for injuries caused by its products. See, e.g., Lacaillade, 2011 WL 4738654, at *3 n.4 (noting that New Hampshire has an interest in regulating the liability of its corporations); see also Turcotte v. Ford Motor Co., 494 F.2d 173, 178 (1st Cir. 1974).

Therefore, the fourth factor has little relevance but, to the extent it carries any weight, it favors the application of New Hampshire law.

The fifth factor—the sounder rule of law—"allows the court, where everything else is equal, to choose to apply [a] state's rule that it regards as wiser, sounder, and better calculated to serve the total ends of justice, especially where one state's rule lies in the backwater of the modern stream." TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-CV-459-JL, 2015 WL 5714686, at *6 (D.N.H. Sept. 29, 2015) (internal quotation marks and citation omitted). "As such, [this factor] tends to play a tie-breaker role in close cases." Id. (internal quotation marks and citation omitted).

The sounder rule of law depends on the policies behind the conflicting laws and the court's view of "the socio-economic facts of life at the time when the court speaks." Geraghty, 169 N.H. at 412. This factor applies "even when the injury occurs out of State." LaBounty v. Am. Ins. Co., 122 N.H. 738, 743 (1982).

Defendants gloss over the fifth factor in their memorandum in support of their motion to dismiss (and do not address it in their reply), making no argument as to which law is sounder with respect to breach of warranty or consumer protection law claims. Instead, defendants' choice-of-law analysis focuses on Maine's relationship to the surgeries and sale of their mesh product and they argue that because the relationship with Maine is significant, Maine law governs. In support, defendants cite the Restatement (Second) Conflict of Laws § 146, which provides the "significant relationship" test. See doc. no. 127 at 6. While the "significant relationship" test is used in some states, it is not used in New Hampshire.[2] TIG Ins., 2015 WL

---

[2] In their reply, defendants rely on a case from the District of Illinois to show that New Hampshire's choice-of-law framework and the significant relationship test are "substantially similar." In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig., No. 14-CV-

10

5714686, at \*4; Geraghty, 169 N.H. at 409. Defendants make no argument that Maine provides the sounder rules of law as to breach of warranty and consumer protection law.

The New Hampshire "legislature enacted RSA chapter 358–A in 1970 to 'ensure an equitable relationship between consumers and persons engaged in business.'" Hair Excitement, Inc. v. L'Oreal U.S.A., Inc., 158 N.H. 363, 368 (2009) (quoting Hughes v. DiSalvo, 143 N.H. 576, 578 (1999)). "The purpose of the CPA is to provide broad protection for consumers." LaChance v. U.S. Smokeless Tobacco Co., 156 N.H. 88, 97 (2007); see also Ne. Lumber Mfrs. Assoc. v. N. States Pallet Co., 710 F. Supp. 2d 179, 188 (D.N.H. 2010) ("The CPA is a comprehensive statute whose language indicates that it should be given broad sweep." (internal quotation marks and citations omitted)).

With regard to breach of warranty claims, New Hampshire law does not impose a reliance requirement for such claims. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 842 (2005). The New Hampshire Supreme Court has stated that eliminating the requirement "supports the underlying purpose of the law of warranty, which is to determine what it is the seller has agreed to sell, thereby making reliance irrelevant." Id.

Defendants make no argument that Maine's warranty law, requiring reliance, and Maine's Unfair Trade Practices Act, limited to consumer transactions, provide the sounder rules of law. They argue instead that Maine has a more significant relationship to the injury. As is

---

5696, 2017 WL 1196990, at \*33 (N.D. Ill. Mar. 31, 2017). As the court in Fluidmaster notes, however, many New Hampshire courts apply the five-factor test or consider the "significant relationship" test only as to contract claims. Id. (citing Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991), Aftokinito, 2010 WL 3168295, at \*3, and Smith v. Morbark Indus., Inc., 733 F. Supp. 484, 487 (D.N.H. 1990)). To the extent defendants urge a choice-of-law analysis other than New Hampshire's five-factor test, the court finds their arguments unpersuasive.

11

explained above, that is not the standard used under New Hampshire law. In the absence of any theory to show that Maine provides the sounder rule of law, the fifth factor weighs in favor of New Hampshire law and tips the balance in that direction. The court will therefore apply New Hampshire law to the liability portion of Newell's breach of warranties and consumer protection law claims.

II. Merits of the Claims

Defendants move to dismiss Newell's breach of warranties claims, Counts V and VI, and the consumer protection law claim, Count VII, on the ground that Newell has failed to allege sufficient facts to state those claims under Maine law. Because New Hampshire governs these claims, that ground is meritless.

Defendants also contend that Newell's breach of warranties claims are insufficient under New Hampshire law because Newell did not allege that he gave defendants notice and an opportunity to cure under RSA 382-A:2-607(3)(a). Defendants have not shown, however, that notice is an element of a breach of warranty claim, which must be pleaded, rather than an affirmative defense to be raised by defendants. See Pigulski v. Johnson & Johnson, Inc., No. 18-cv-1061-LM, 2019 WL 2582540, at *5 (D.N.H. June 24, 2019). Such an argument would be better addressed through a properly supported motion for summary judgment. Therefore, defendants' motion to dismiss Counts V and VI is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 121) is denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

August 28, 2019

cc: Counsel of Record